**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**ISAAC L. PETERSON,**

    Plaintiff,

vs.                                         Case No. 4:10cv332-MP/WCS

**MICHAEL R. McCOY,**

    Defendant.

                             /

## SECOND REPORT AND RECOMMENDATION[1]

Discovery ended on July 18, 2011, doc. 43, and Defendant filed a motion for summary judgment on August 4, 2011. Doc. 53. Plaintiff, a *pro se* inmate, was advised of his obligation to respond to that motion, doc. 61, and advised that his own motion for summary judgment, doc. 54, was procedurally insufficient. Doc. 61. Plaintiff withdrew his motion for summary judgment, doc. 65, and Plaintiff's motion to strike parts of the Defendants' motion for summary judgment, doc. 63, was denied. Doc. 70. Furthermore, it was determined that Plaintiff's "amended sworn affidavit," doc. 64, could not be considered because Plaintiff did not sign the affidavit. Doc. 70.

---

[1] The first report and recommendation, doc. 33, recommended denial of Defendant's motion to dismiss, doc. 22. It was adopted on April 22, 2011. Doc. 44.

On September 26, 2011, Plaintiff filed his memorandum in opposition to the Defendant's motion for summary judgment. Doc. 71. Defendant's motion for leave to file a reply, doc. 72, was denied. Doc. 73. The summary judgment motion, doc. 53, and Plaintiff's response, doc. 71, are ready for a ruling.

**Allegations of the Amended Complaint, Doc. 7**

Plaintiff alleged that on March 26, 2010, after he had a sick call visit, Defendant McCoy ordered Plaintiff to step into the hallway to be handcuffed. Doc. 7, p. 5. Defendant told Plaintiff he was going to be placed in administrative confinement for disorderly conduct. *Id.* While another officer put handcuffs on Plaintiff, Plaintiff asked Defendant McCoy how he was being disorderly. *Id.* The Defendant suddenly grabbed Plaintiff's right arm and pushed him "hard up against the wall in medical hallway." *Id.* Plaintiff said he felt a sharp pain in the arm Defendant McCoy grabbed. *Id.*

Plaintiff was escorted to administrative confinement and as he entered the area, Plaintiff noticed his arm was bleeding from the place on his arm where he had felt the sharp pain. *Id.* Plaintiff informed the on-duty confinement officer of his injury, and the officer told Plaintiff to write an informal grievance to the warden. *Id.*, at 6. Plaintiff said that on that same day, he wrote an informal grievance as directed and requested the video record from the security camera be preserved for grievance purposes. *Id.*

On April 1, 2010, Plaintiff was taken back to the medical building and the wound on Plaintiff's right arm was documented. *Id.* Plaintiff was transferred several times in mid-April, 2010, and then on April 22, 2010, the Regional Inspector visited Plaintiff and gave him the opportunity to write a witness statement detailing the incident that occurred on March 26, 2010. *Id.*, at 6. Plaintiff completed his witness statement, and

then was placed under oath by the Inspector, swearing to the truth of the statement.  *Id.*  Plaintiff alleged that he exhausted administrative remedies prior to initiating this case, and states that the use of force by Defendant McCoy on March 26, 2010, is unrelated to the disciplinary reports he received.  *Id.*, at 7.  Plaintiff received two disciplinary reports from this incident, charging disorderly conduct and disrespect to officials.  *Id.*, attachment, page number not available (doc. 7-1 on ECF, pp. 8 and 13).[2]

**Legal standards governing a motion for summary judgment**

On a motion for summary judgment, the Defendant initially has the burden to demonstrate an absence of evidence to support the nonmoving party's case.  Celotex Corporation v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  If they do so, the burden shifts to Plaintiff to come forward with evidentiary material demonstrating a genuine issue of material fact for trial.  *Id.*  An issue of fact is "material" if it could affect the outcome of the case.  Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1259 (11th Cir. 2004) (citations omitted).  Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, Matsushita Electric Industrial Co., LTD. v. Zenith Radio Corporation, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence is insufficient.  The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Hickson Corp., 357 F.3d at 1260, *quoting* Anderson v.

---

[2] References are to the paper copy and page number, followed by a reference (in parenthesis) to the corresponding document and page in the electronic docket.  Both citations are referenced as a pro se litigant will not have access to the court's electronic docket.

Case No. 4:10cv332-MP/WCS

Liberty Lobby, 477 U.S. 242, 252, 106 S. Ct. 2505, 2505, 91 L. Ed. 2d 202 (1986).  All reasonable inferences must be resolved in the light most favorable to the nonmoving party, Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999), if there is a genuine dispute as to those facts.  Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007), *cited in* Ricci v. DeStefano, 129 S.Ct. 2658, 2677 (2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  Matsushita Elec. Industrial Co., 475 U.S. at 587 (internal quotation marks omitted), *quoted in* Ricci v. DeStefano, 129 S.Ct. at 2677.

"Rule 56(e) . . . requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997), *cert. denied* 522 U.S. 1126 (1998), *quoting* Celotex, 477 U.S. at 324, 106 S. Ct. at 2553 (quoting Fed. R. Civ. P. 56(c), (e)).  The nonmoving party need not produce evidence in a form that would be admissible as Rule 56(e) permits opposition to a summary judgment motion by any of the kinds of evidentiary materials listed in Rule 56(c).  Owen v. Wille, 117 F.3d at 1236; Celotex, 477 U.S. at 324, 106 S. Ct. at 2553.

**The relevant Rule 56(e) evidence**

　**Defendant's Evidence**

At approximately 6:30 a.m. on March 26, 2010, Plaintiff was in the medical building for a sick call visit with Nurse Boatenreiter when Plaintiff became belligerent,

and he was "becoming increasingly agitated."  Doc. 53, p. 3; Ex. B (doc. 53-2).[3]  The nurse stopped the sick call for Plaintiff due to Plaintiff's increasing agitation.  Ex. J (doc. 53-10, pp. 3-4).  The nurse called Defendant McCoy to the medical unit at approximately 6:30 a.m. and Defendant McCoy tried to calm Plaintiff down.  Ex. B.  As Plaintiff and the Defendant walked into the hallway, Defendant McCoy "continued to try to calm him down."  *Id.*  However, Plaintiff became even more agitated, he "became louder, more belligerent, disruptive and argumentative" and was "flailing his arms and moving in a hostile and aggressive manner."  *Id.*  At that point, Defendant McCoy told Plaintiff he would receive a disciplinary report for disorderly conduct and would be going to confinement.  *Id.*  Plaintiff then yelled and cursed at Defendant McCoy, and was very disrespectful.  *Id.*

Officer Wayne Scott was assigned to the medical unit that morning and heard Plaintiff yelling and cursing at Defendant McCoy.  Exhibits B, E (doc. 53-5).  Officer Scott went to assist Defendant McCoy and McCoy put Plaintiff "in a custodial hold" by using his left hand to hold Plaintiff's right tricep.  Ex. B.  Plaintiff put his hands behind his back and Defendant McCoy directed Officer Scott to put hand restraints on Plaintiff.  Exhibits B, E.  Defendant McCoy continued his custodial hold on Plaintiff while summoning Sergeant Swain to escort Plaintiff to confinement.  Ex. B.  When Swain arrived, Defendant McCoy released his custodial hold on Plaintiff and returned to his regular duties.  *Id.*  Sergeant Swain then "summoned Sergeant Riggles and when he arrived" they escorted Plaintiff to confinement without further incident.  Ex. F (doc. 53-6),

---

[3] References to exhibits are to those attached to document 53, Defendant's summary judgment motion.  Plaintiff submitted only one exhibit, his affidavit, and it will simply be referred to as Plaintiff's affidavit.

Ex. G (doc. 53-7).  Sergeant Swain recalled that Plaintiff "was wearing a jacket" when he escorted him from the medical building because Swain "had to search the jacket he was wearing upon reaching confinement."  Ex. F.

Officer Scott did not observe Defendant McCoy push or shove Plaintiff into the wall either before or after the restraints were applied.  Ex. E.  Plaintiff did not inform Scott that Defendant McCoy had scratched his arm, "nor did he state that his right arm hurt in any way."  *Id.*  Neither Sergeant Swain nor Sergeant Riggles saw Defendant McCoy push or shove Plaintiff into a wall, and they saw no signs of injury to Plaintiff or any blood.  Exhibits F, G.

Defendant McCoy states in his affidavit, "At no time did I push or shove [Plaintiff] into a wall either before or after hand restraints were applied."  Ex. B.  Further, he denies trying to scratch Plaintiff when placing him in the custodial hold.  *Id.*  He avers, "I do not recall scratching him with my fingernail when I placed him in the custodial hold."  *Id.*  Additionally, Defendant McCoy points out that it is "unlikely" that he scratched Plaintiff with his fingernail because he bites his "fingernails so they stay short."  *Id.*

At 6:40 a.m. on the day of the incident, approximately 10 minutes after the incident, a pre-special housing health assessment form was filled out.  Ex. J (doc. 53-10, p. 4).  This form listed Plaintiff's vital signs.  *Id.*  Plaintiff's weight was 202 pounds.  *Id.*  "No" was indicated for the question as to whether Plaintiff had any apparent acute medical reason that would preclude placement in special housing.  *Id.*  There was no notation that he had any injury from the altercation with Defendant McCoy.  *Id.*

On the day after the incident, March 27th, Plaintiff had an appointment for medical exercises for knee pain, but he signed a refusal of health services form.  Ex. J

(doc. 53-10, p. 5).  There is no evidence on this form that Plaintiff told medical personnel that day that he had any injury from the previous day.  *Id.*

Plaintiff first complained that he was injured on the second day after the incident day, on March 28th, in response to two disciplinary reports for disorderly conduct and disrespect to officials for his behavior on March 26th.[4]  Ex. B (doc. 53-2, pp. 8-9). Plaintiff completed two witness statement forms and at that point, complained that "Captain McCoy's fingernail dug into [his] flesh causing [him] loss of blood."  *Id.,* at 8. Plaintiff also claimed that Defendant McCoy's action is what "provoked [Plaintiff] to anger."  *Id.*, at 9.

On April 1, 2010, Plaintiff again officially asserted that he had been injured.  This occurred when Plaintiff declared a "medical emergency" and a "post use of force examination" was performed by Nurse Robinson.  Ex. J (doc. 53-10, pp. 7-8).  Plaintiff alleged "staff abuse."  *Id.*  The medical record assessment states, "scab noted above right elbow" but found "no other bruises, scratches or discoloration."  *Id.*  On a standard diagram, the position of the scab was indicated behind the right elbow.  *Id.*  No medical treatment was provided and the physician was not notified.  *Id.*

Plaintiff submitted an informal grievance on March 26, 2010, complaining that Defendant McCoy used excessive force on him when he grabbed Plaintiff's arm and

---

[4] Plaintiff was found guilty of both disciplinary reports and punished with time in disciplinary confinement but he did not have gain time forfeited.  Exhibits C, D (doc. 53-3, doc. 53-4).

"pushed" him into the wall. Ex. H (doc. 53-8). Plaintiff did not mention injury to the back of his right elbow.[5]  Id.

Based on that informal grievance, an incident report was generated and forwarded to Inspector Hayden for review and investigation. Ex. I (doc. 53-9). Inspector Hayden obtained witness statements and reviewed Plaintiff's medical record as part of his investigation. Exhibits L, M. Affidavits were obtained from several nurses, Sergeants Riggles and Swain, Officer Scott, and Plaintiff. Id. During the investigation, Nurse Carla Rhea stated in her affidavit that Plaintiff became upset because he did not agree with Nurse Boatenreiter's assessment, and then he began yelling profanities at Defendant McCoy. Ex. L (doc. 53-12, pp. 4-5). She admitted she could not see into the hallway, but said she heard no noises that would indicate a struggle. Id. She said Defendant McCoy "did not raise his voice or use any inappropriate language." Id. She further said Plaintiff did not call out for help or indicate he was hurt, and she heard no "thumps or bangs against walls in the hallway." Id.

Nurse Boatenreiter also provided a sworn statement attesting to Plaintiff's belligerent behavior. Ex. L (doc. 53-12, p. 7). She said that after Defendant McCoy took Plaintiff out into the hallway, she remained in the triage room. Id. She could not see them in the hall, but she heard Plaintiff cursing at Defendant McCoy. Id. She said that Defendant McCoy calmly told Plaintiff "to face the wall and cuff up." Id. She further

---

[5] Plaintiff asserted in this informal grievance that while Defendant McCoy was telling Plaintiff he would be locked up in confinement, a Sergeant put Plaintiff "in handcuffs and after [Plaintiff] was secured in the handcuffs, Captain McCoy grabbed [his] right arm and pushed [him] into the wall." Ex. H (doc. 53-8). Plaintiff said the incident "took place in the Medical Department hallway directly in view of the surveilance [sic] camera." Id. Plaintiff said he was "grieving against Capt. McCoy" and the "use of excessive force." Id.

said that she never heard Plaintiff "give any verbal indication of being hurt or abused" and she did not hear noise from the hallway indicating someone was "being pushed into the wall." *Id.*

Officer Scott said he responded to the scene to provide assistance because he heard the verbal altercation between Plaintiff and Defendant McCoy. Ex. L (doc. 53-12, p. 11). Officer Scott said he put Plaintiff in handcuffs and Plaintiff was given a "direct verbal order by Captain McCoy to stay on the wall." *Id.* Officer Scott said Defendant McCoy did not push Plaintiff against the wall, but "used verbal instructions to calm" Plaintiff. *Id.* Likewise, Sergeant Swain stated that when he arrived on scene, Defendant McCoy was holding Plaintiff in a custodial hold and Plaintiff was "facing the wall and verbally abusing" Defendant McCoy. Ex. L (doc. 53-12, p. 9). He did not observe Defendant McCoy "abuse, push, or shove" Plaintiff. *Id.* The Inspector's disposition statement is that "the witnesses refuted" Plaintiff's allegations. Ex. L (doc. 53-12, p. 3).

Plaintiff provided his own sworn affidavit with his response. Doc. 71, pp. 4-5. Plaintiff said that while he was at sick call on March 26, 2010, the Nurse offered him an exercise manual, which Plaintiff refused. *Id.*, at 4. Defendant McCoy "entered the sick call room and told" Plaintiff he was "going to confinement for disorderly conduct and" directed Plaintiff to "step out into the hallway." *Id.* Plaintiff did so and Officer Scott "came to place handcuffs on" Plaintiff. *Id.* While the handcuffs were being applied on Plaintiff's wrist, with Plaintiff's arms behind his back, Plaintiff asked Defendant McCoy, "How was I being disorderly?" *Id.* The Defendant did not answer Plaintiff, "but instead grabbed [Plaintiff's] right tricep with his left hand and pushed [him] into the wall." *Id.*

Plaintiff averred that he felt a sharp pain in his right tricep when Defendant McCoy grabbed Plaintiff's "right tricep and pushed [him] into the wall."  *Id.*

Plaintiff said he was taken to confinement and when he "was uncuffed and put in a cell [he] noticed that [he] was bleeding from [his] right tricep."  *Id.*, at 5.  Plaintiff said he "immediately told the officer in charge of confinement" but was told to just write an informal grievance about it to the warden.  *Id.*  Plaintiff did so the same day, and it was not until April 1, 2010, that Lieutenant Gray came to Plaintiff's cell and escorted Plaintiff to the medical building.  *Id.*  There, Lieutenant Gray "took a picture of the wound caused by [the Defendant] while a nurse took [his] vitals."  *Id.*

**Legal Analysis**

A claim that excessive and unnecessary force was used by correctional officers is founded upon the Eighth Amendment and requires a showing of "unnecessary and wanton infliction of pain."  Whitley v. Albers, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986).  Relevant to the inquiry will be "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted."  *Id.* at 320; *see e.g.*, Williams v. Burton, 943 F.2d 1572, 1575 (11th Cir. 1991).  The court should take a deferential view, "balancing the prisoner's Eighth Amendment rights with the competing institutional concerns for the safety of prison staff and inmates."  Williams, 943 F.2d at 1575.

"The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."  Hudson v. McMillian, 503 U.S. 1, 7, 112 S. Ct. 995, 999, 117 L.

Ed. 2d 156 (1992).[6]  "[T]he Eighth Amendment's prohibition of cruel and unusual punishment excludes from constitutional recognition *de minimis* uses of physical force, *provided that the use of force is not of a sort 'repugnant to the conscience of mankind*.' "  Siglar v. Hightower, 112 F.3d 191, 193-94 (5th Cir. 1997) (emphasis added), *quoting* Hudson, 503 U.S. at 10, 112 S. Ct. at 1000 (considering the "physical injury" requirement of the PLRA).  Further, "the injury must be more than *de minimus*, but need

---

[6] With respect to the "injury" issue in excessive force cases, it is important to review what the Court said in Hudson in context, and not confuse the extent of *injury* incurred with more relevant question, whether the *force* used was excessive:

> In the excessive force context, *society's expectations are different* [from society's expectations as to the level of conditions-of-confinement and medical care for prisoners].  *When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated.*  See Whitley,[] supra, 475 U.S., at 327, 106 S.Ct., at 1088.  *This is true whether or not significant injury is evident.*  Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.  Such a result would have been as unacceptable to the drafters of the Eighth Amendment as it is today.  See *Estelle*, supra, 429 U.S., at 102, 97 S.Ct., at 290 (proscribing torture and barbarous punishment was "the primary concern of the drafters" of the Eighth Amendment); *Wilkerson v. Utah*, 99 U.S. 130, 136, 25 L.Ed. 345 (1879) ("[I]t is safe to affirm that punishments of torture ... and all others in the same line of unnecessary cruelty, are forbidden by [the Eighth Amendment]").
>
> That is not to say that every malevolent touch by a prison guard gives rise to a federal cause of action.  See *Johnson v. Glick*, 481 F.2d, at 1033 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights").  The Eighth Amendment's prohibition of "cruel and unusual" punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort " 'repugnant to the conscience of mankind.' "  *Whitley*, 475 U.S., at 327, 106 S.Ct., at 1088 (quoting *Estelle*, supra, 429 U.S., at 106, 97 S.Ct., at 292) (internal quotation marks omitted).

503 U.S. at 9-10, 112 S.Ct. at 1000 (emphasis added).

Case No. 4:10cv332-MP/WCS

not be significant." Siglar, 112 F.3d at 193. "[T]he type of punishment, rather than some arbitrary quantity of injury, may be relevant for Eighth Amendment Claims." Harris v. Chapman, 97 F.3d 499, 505 (11th Cir. 1996), *cert. denied* 520 U.S. 1257 (1997). *See also* United States v. LaVallee, 439 F.3d 670, 687-688 (10th Cir. 2006) (rejecting the notion that "*de minimis* injury can serve as conclusive evidence that *de minimis* force was used").

There is a factual dispute as to whether Defendant McCoy pushed or shoved Plaintiff against the wall, and Plaintiff's version must be accepted as true on this motion. There is no dispute, however, that Defendant McCoy put Plaintiff into a custodial hold until another officer arrived to escort Plaintiff to confinement, tightly gripping Plaintiff's arm. Further, Plaintiff's affidavit does not clearly dispute Defendant's evidence, that Plaintiff was yelling and causing a disruption in the medical department. But there is no dispute that when Defendant arrived, he was told that Plaintiff had been disruptive and thus *thought* that Plaintiff had been disorderly. This is shown by Plaintiff's question, asking Defendant how he had been disorderly. It is undisputed that Defendant encountered Plaintiff at the health clinic, with other health clinic staff present, including females. It is undisputed that Plaintiff weighed 202 pounds. Finally, it is undisputed that only *de minimis* injury occurred. Plaintiff said he felt a "sharp pain" when Defendant McCoy grabbed him and "pushed him into the wall." The only result of that minimal force was a scab, noted about a week later. Plaintiff said that he "noticed he was bleeding" from his tricep where Defendant McCoy grabbed him, yet Plaintiff did not even know himself that he had been scratched and was "bleeding" until arriving in the

confinement cell, likely when he removed his jacket. There is no evidence that this was anything more than a minor scratch that healed without the need for treatment.

In summary, it is assumed that Plaintiff was shoved against the wall after he was handcuffed. Plaintiff has not described the degree of impact with the wall, and it cannot be assumed that the impact was in any way painful or caused any injury. Plaintiff's only complaint is that Defendant's grip on his right arm was painful and caused a minimal scratch that bled somewhat. Plaintiff weighed 202 pounds, and when Defendant encountered Plaintiff, Defendant thought that Plaintiff had just been disruptive in the clinic. Considering the lack of serious injury, the lack of any injury or pain from the shove, Plaintiff's weight and the danger he presented to clinic staff due to his weight, and Defendant's belief that Plaintiff had been disorderly, a violation of the Eighth Amendment has not been shown.

Accordingly, it is **RECOMMENDED** that Defendant McCoy's motion for summary judgment, doc. 53, be **GRANTED** and judgment be entered in the Defendant's favor.

**IN CHAMBERS** at Tallahassee, Florida, on October 20, 2010.

s/ William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**